UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELMORE NICHOLS,

                Petitioner,

                                    Case No. 21-cv-12372

v.                                Honorable Linda V. Parker

MELINDA BRAMAN,

                Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS AND A CERTIFICATE OF APPEALABILITY, BUT GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

This is a habeas case filed by a Michigan prisoner under 28 U.S.C. § 2254. Petitioner Elmore Nichols was convicted after a bench trial in the Wayne County Circuit Court of first-degree home invasion, Mich. Comp. Laws § 750.110a(2). The trial court sentenced Nichols as a fourth habitual offender under Michigan Compiled Laws § 769.12 to a term of 280 months to 60 years' imprisonment. Nichols raises six grounds in support of his request for habeas relief concerning: (1) the trial court's denial of his request for self-representation, (2) the voluntariness of his jury trial waiver, (3) ineffective assistance of trial counsel for conceding Nichol's guilt, (4) the trial court's denial of independent DNA retesting, (5) ineffective assistance of counsel for failing to obtain a DNA expert, and (6) ineffective assistance of appellate counsel. (ECF No. 1 at PageID. 1-27.)

For the reasons explained below, the Court is denying Nichols habeas relief. The Court also is denying him a certificate of appealability and leave to appeal in forma pauperis should he choose to appeal this decision.

## I.    Background

Nichols' convictions arose from a home invasion occurring in the early morning hours of June 11, 2012, at an apartment complex in Southgate, Michigan. At Nichol's bench trial, Joselo Castillo testified that he and Elizabeth Moncion were sleeping when they heard sounds of an intruder in their apartment. They went into the living area to investigate and found the front door open and a water bottle sitting out of place on a chair. The couple looked around and discovered that Castillo's wallet was missing. Castillo walked outside the apartment and encountered a neighbor who said she saw a strange man enter their apartment through a sliding door.

Castillo sealed the water bottle in a plastic bag and took it to the police. A subsequent DNA analysis matched cellular material taken from the water bottle with a known sample taken from Nichols. The prosecution's DNA expert calculated the odds that the material from the bottle came from someone unrelated to Nichols to be virtually astronomical. Based on this evidence, the trial court found Nichols guilty of first-degree home invasion. The trial court sentenced him to a term of 280 months to 60 years' imprisonment.

2

Nichols filed a direct appeal.  His appellate counsel filed a brief in the

Michigan Court of Appeals raising the following claims:

I.      Appellant was denied his constitutional right to self-
        representation when this court refused his request for self-
        representation and foreclosed any further discussion of the issue
        by informing him that he could only be represented by his
        attorney.

II.     Appellant is entitled to a new trial because there was a
        breakdown in the relationship between Appellant and defense
        counsel, and because the trial judge failed to conduct an
        adequate inquiry into the breakdown.

III.    Appellant was denied his constitutional right to due process
        where the trial court improperly determined that 10 points were
        properly scored for OV 13 with evidence of out-of-state
        convictions, even though the acts that led to those convictions
        occurred in 1981, a time period more than 30 years removed
        from the time frame of the instant case.

The Michigan Court of Appeals rejected the first two claims, and affirmed

Nichols' conviction in an unpublished opinion. *People v. Nichols*, No. 315284,

2014 WL 2753918 (Mich. Ct. App. June 17, 2014).  The court agreed with

Nichol's third claim, however, and vacated Nichols' sentence and remanded the

matter for resentencing. *Id*. at *4.

Nichols filed an application for leave to appeal in the Michigan Supreme

Court raising only his self-representation claim.  The Michigan Supreme Court

denied the application because it was not persuaded that the question presented

3

should be reviewed.  *People v. Nichols*, 858 N.W.2d 456 (Mich. 2015).[1]

On November 18, 2016, the trial court resentenced Nichols to the same term of 280 months to 60 years' imprisonment.  (ECF No. 1 at PageID.29.)  Nichols appealed his sentence in the Michigan Court of Appeals.[2]  The court affirmed Nichols' sentence but remanded the matter to the trial court for correction of the amended judgment of sentence.  *People v. Nichols*, No. 339252, 2018 WL 4576635, at *1 (Mich. Ct. App. Sept. 18, 2018).  Nichols then sought leave to appeal in the Michigan Supreme Court raising the same sentencing claims.  The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court.  *People v. Nichols*, 923 N.W.2d 242 (Mich. 2019).

On May 1, 2019, Nichols returned to state trial court and filed a motion for relief from judgment.  (ECF No. 10-5.)  The motion raised claims concerning: (1) the voluntariness of the jury trial waiver, (2) ineffective assistance of trial counsel

---

[1] In 2015—before the trial court resentenced Nichols—Nichols filed a federal habeas petition under § 2254, which was assigned to the Honorable Paul D. Borman.  *See Nichols v. Winn*, 2:15-cv-12809 (E.D. Mich., filed Aug. 7, 2015).  In that petition, Nichols argued that he was denied his Sixth Amendment right to self-representation.  Pet., *id.* (E.D. Mich. filed Aug. 7, 2015), ECF No. 1.  After a complex procedural history, Judge Borman ultimately dismissed the case without prejudice for lack of jurisdiction on May 15, 2019.  *See* Order, *id.* (E.D. Mich. May 15, 2019), ECF No. 26.

[2] Because the present habeas petition does not raise any issues pertaining to sentencing, the Court will not discuss the sentencing claims in detail.

for conceding his guilt, (3) trial court's abuse of discretion for denying the request for independent DNA testing, (4) ineffective assistance of counsel for failing to obtain a DNA expert, (5) ineffective assistance of counsel for failing to object to scoring of Offense Variables 4 and 9, and (6) ineffective assistance of appellate counsel for failing to raise meritorious issues on appeal.  (*Id*.)  On September 6, 2019, the trial court denied the motion for relief from judgment both on the merits and pursuant to Michigan Court Rule 6.508(D)(3) for failing to show good cause for not raising the claims on direct appeal and actual prejudice.  (ECF No. 10-10 at PageID.857-868.)

Nichols then filed an application for leave to appeal in the Michigan Court of Appeals.  In lieu of granting the delayed application, the Michigan Court of Appeals vacated the rejection of Nichols' claims concerning Offense Variables 4 and 9.  It remanded the matter to the trial court for reconsideration of Nichols' challenges to the scoring of those variables and the related ineffective assistance of counsel claim. The appellate court further denied the application for leave to appeal because Nichols failed to establish that the trial court erred in denying the motion for relief from judgment.  (ECF No. 10-10 at PageID.786.)  Nichols applied for leave to appeal this decision in the Michigan Supreme Court, which was denied because "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  *People v. Nichols*, 951 N.W.2d 897 (Mich. 2020).

On September 29, 2021, Nichols filed the present habeas petition, which the

Court understands as raising the following claims:

I.   The state court's denial of this petitioner's right to self-representation
     was contrary to—or an unreasonable application of—clearly established
     federal law.

II.  The state court's inadequate jury waiver process was contrary to—or an
     unreasonable application of—clearly established federal law.

III. The state court's rejection of petitioner's [ineffective assistance of
     counsel] claim for conceding guilt at trial resulted in a decision that was
     contrary to—or an unreasonable application of—clearly established
     federal law.

IV.   The state court's denial of petitioner's request for independent DNA
      testing was contrary to—or an unreasonable application of—clearly
      established federal law.

V.   The state court's decision rejecting petitioner's claim that trial counsel
     was ineffective for failing to enlist the aid of a DNA expert was
     objectively unreasonable.

VI.  The state court's decision rejecting petitioner's claim of ineffective
     assistance of appellate counsel was objectively unreasonable.

(*See* ECF No. 1.)

Respondent filed an Answer, arguing that Nichols' II, III, IV, and V claims

are procedurally defaulted and all claims lack merit.  Respondent also filed the

Rule 5 materials.

## II.   Legal Standard

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

imposes the following standard of review for habeas cases:

6

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409.

AEDPA "imposes a highly deferential standard for evaluating state-court rulings," and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations omitted). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v.*

7

*Alvarado*, 541 U.S. 652, 664 (2004)).  A "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002).

A state court's factual determinations are presumed correct on federal habeas review.  *See* 28 U.S.C. § 2254(e)(1).  This presumption is rebutted only with clear and convincing evidence.  *Id*.  Moreover, for claims adjudicated on the merits in state court, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III.    Discussion

### A.    Procedural Default

Although Respondent argues Nichols has procedurally defaulted several of his claims, this Court is not obligated to address that defense because procedural default is not a jurisdictional bar to review the merits.  *Smith v. Nagy*, 962 F.3d 192, 207 (6th Cir. 2020); *Trest v. Cain*, 522 U.S. 87, 89 (1997); *see also Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)) ("[F]ederal courts are not required to address a procedural default issue before deciding against the petitioner on the merits[.]")  The Sixth Circuit recognizes that its decisions "may sometimes reach the merits of a petitioner's claim, particularly when the merits are easily resolvable against the petitioner while the procedural issues are complicated." *Smith*, 962 F.3d at 207 (citing

*Lambrix*, 520 U.S. at 525); *see also id.* (finding "resolution of the procedural issues

. . . not necessary [and] that the claim is better resolved on the merits").  Here, the

Court finds it more efficient to proceed directly to the merits of Nichols' claims.

### B.    Right to Self-Representation

Nichols first argues that the trial court denied his Sixth Amendment right to

self-representation.  Nichols asserts that on the morning of trial, the court

summarily denied him the opportunity to express his desire for self-representation

after counsel stated that Nichols wished to discontinue her representation.  Nichols

further argues that the trial court erred, again, when he requested to represent

himself midtrial and the trial court denied it.

The Michigan Court of Appeals rejected the claim, concluding, in relevant

part:

> The prosecutor concedes that the trial court "did not ask questions of
> Defendant regarding his request . . . to represent himself," but
> contends that the court's failure does not justify the reversal of his
> conviction because defendant only equivocally asked to represent
> himself.  At the beginning of the first day of defendant's bench trial,
> defense counsel informed the trial court that defendant wished to
> discontinue her representation because of a disagreement involving a
> request for forensic retesting.  The court denied defendant's request,
> but he never suggested that he wanted to represent himself.  After the
> prosecutor's opening statement, defense counsel advised the court that
> defendant wanted to leave the courtroom, and he departed to a nearby
> holding cell.  Defendant again failed to express a desire to represent
> himself, and the first witness, one of the home invasion victims,
> testified.
>
> The trial court permitted defense counsel to ascertain whether

9

defendant had any questions for the first witness.  On returning to the courtroom, defense counsel informed the court that defendant "now wants to represent himself."  In relevant part, the court denied defendant's request:

> Tell him it's not happening today.  I'm not going to have one more second of a trial . . . adjournment or anything else . . . .
>
> * * *
>
> We're in the middle of trial, and it's not happening.
>
> * * *
>
> Okay.  Now, what you have to understand, and I'm going to tell the Court of Appeals, he was here when we started this morning.
>
> * * *
>
> And you said that he did not want you to represent him.
>
> * * *
>
> And I said, I'm sorry, you're ordered to continue your representation.
>
> * * *
>
> He wants to do . . . another DNA expert, another DNA test.  He wants to do anything to delay the trial, and I'm not permitting it.  And I'm not permitting him to suddenly decide he wants to represent himself.  He could have said that when he sat here, when he walked in this morning.  He did not do any of that.  What he's trying to do is delay the trial, and to put in appellant [sic] issues.  It's not going to happen today.
>
> * * *
>
> Now, I said, no, he cannot represent himself at this point.  I'm ordering you to represent him.  And I'm not going to run back and forth, and bring him back out, and get onto the floor and beg him to go to trial.  He's in trial.

Because defendant mentioned self-representation only after moving to disqualify his counsel on the first day of trial and absenting himself from the courtroom, the trial court did not clearly err in implicitly finding that defendant made an equivocal request for self-

representation. *Russell*, 471 Mich. at 187.  Furthermore, the trial court did not clearly err in observing that defendant's midtrial request to represent himself would "disrupt, unduly inconvenience, and burden the court and the administration of the court's business." *Russell*, 471 Mich. at 190.  Consequently, the court properly denied defendant's request.

*Nichols*, 2014 WL 2753918 at *1-2.

The state court's decision on this issue is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.  Criminal defendants have a constitutional right to conduct their own defense at trial if they voluntarily and intelligently elect to do so.  *Martinez v. Ct. of Appeal of Calif., Fourth App. Dist.*, 528 U.S. 152, 154 (2000); *Faretta v. California*, 422 U.S. 806, 807 (1975).  However, the right to self-representation is not absolute.  *Martinez*, 528 U.S. at 161.

Moreover, a defendant's request for self-representation must be made clearly and unequivocally.  *See Faretta*, 422 U.S. at 835; *see also United States v. Martin*, 25 F.3d 293, 295 (6th Cir. 1994) (indicating that "[t]o assert the right of self-representation, a defendant must do so unequivocally") (citing *Hamilton v. Vasquez*, 17 F.3d 1149 (9th Cir. 1994), abrogated on other grounds by *Calderon v. Coleman*, 525 U.S. 141 (1998)).  Finally, a defendant's invocation of his right of self-representation must be timely made.  *See Moore v. Haviland*, 531 F.3d 393, 403 (6th Cir. 2008).  "Courts will balance any such assertion [of the right of self-representation] against considerations of judicial delay."  *United States v. Martin*,

11

25 F.3d at 295-96 (footnote omitted).  Although "*Faretta* did not establish a bright-line rule for timeliness," it "necessarily incorporate[d] a loose timing element." *Hill v. Curtin*, 792 F.3d 670, 678 (6th Cir. 2015).  The Sixth Circuit noted that "to the extent that *Faretta* addresses timeliness, as a matter of clearly established law it can only be read to require a court to grant a self-representation request when the request occurs weeks before trial."  *Id.*

First, to the extent Nichols argues that the trial court prevented him from asserting his right to self-representation prior to the start of trial, such an argument is belied by the record.  On the first morning of trial, defense counsel indicated that Nichols requested independent DNA testing of the water bottle, which defense counsel declined to do because it likely would provide additional evidence against her client.  (ECF No. 10-2 at PageID. 203-205.)  The trial court stated that it would not have granted a request for retesting in any event.  (*Id*. at PageID. 204.)  Nichols then asked to personally address the court, which the court denied.  (*Id*.)  Nichols proceeded to inform the court that he would have paid for the DNA testing.  (*Id*.)  The court again denied retesting.  (*Id.*)  Defense counsel then expressed that Nichols no longer wished to have her represent him due to the DNA testing disagreement.  (*Id*. at PageID. 205.)  The court denied the request and indicated that the trial would begin that morning with current counsel's representation.  (*Id*.)  After the prosecutor's opening argument, Nichols indicated, through counsel, that

12

he no longer wished to participate in the trial and requested to be removed from the courtroom.   (*Id*. at PageID. 211.)

The record reveals that Nichols did not indicate to the court or to defense counsel that he wanted to represent himself prior to commencing trial.  Indeed, the trial court emphasized this fact when later addressing Nichols' midtrial request for self-representation:  "He could have said that when he sat here, when he walked in this morning. He did not do any of that."  (ECF No. 10-2 at PageID.236.)  Had Nichols raised the issue earlier, the trial court may have considered his request, despite its untimeliness.  For these reasons, the record does not support Nichols' argument that the trial court denied him the opportunity to assert his right to self-representation prior to trial.

Second, the state appellate court did not unreasonably apply clearly established federal law when it concluded that the midtrial request for self-representation was untimely and would "disrupt, unduly inconvenience, and burden the court and the administration of the court's business."  *Nichols*, 2014 WL 2753918 at *2.  Nor was this decision contrary to clearly established federal law.  The state court's determination aligns with the Supreme Court's directive that trial courts need not permit a defendant to exercise his rights in a manner that obstructs the fair and orderly administration of justice. *See Martinez*, 528 U.S. at 162 ("A trial judge may also terminate self-representation or appoint 'standby

13

counsel'—even over the defendant's objection—if necessary.") (citation omitted). In addressing Nichol's request to represent himself, the trial court noted that Nichols' behavior, i.e., his untimely request for DNA retesting, to fire counsel, for self-representation, and to be removed from the courtroom, showed that he only intended to disrupt and delay trial.  (ECF No. 10-2 at PageID. 236) ("He wants to do anything to delay the trial, and I'm not permitting it.")  Moreover, a request for self-representation must be timely made prior to trial, *Hill*, 792 F.3d at 678, and Nichols' midtrial request clearly does not satisfy that requirement.

In short, the state court did not unreasonably apply federal law by denying Nichol's self-representation claim.  Accordingly, Nichols is not entitled to relief on this claim.

## C.    Waiver of Jury Trial

Next, Nichols argues that he is entitled to habeas relief because his jury trial waiver was invalid.  Specifically, Nichols contends that the court's bailiff handed him the waiver form while in lock-up, and that he signed it without counsel present to fully explain the terms and without a hearing in open court.  (ECF No. 1 at PageID. 20.)  Nichols first raised this claim in his motion for relief from judgment, which the trial court rejected on the merits, concluding, in relevant part:

> In this case, defendant admits to signing the waiver of his jury trial in conjunction with his trial attorney, on December 10, 2012.  As this was formally done on the record, it is presumed the prosecutor consented to the waiver and the Court followed rule [sic] MCR

14

6.402(B).  Further, as in *Mosly* this Court concludes the defendant has to demonstrate that his signed waiver did not meet the constitutional requirements in order to obtain relief from judgment under MCR 6.508(D).  *Mosly, Id.*

Conversely, a trial court's failure to follow the mandated procedural requirements of MCR 6.402(B) could be harmless if "the record establishes that the defendant nonetheless understood that he had a right to a trial by jury and voluntarily chose to waive that right." *Mosly, supra* at 96, 672 NW2d 897.  Thus, this Court in *Mosly* concludes the defendant has not demonstrated that his waiver did not meet the constitutional requirements in order to obtain relief from judgment under MCR 6.508(D).  *Mosly, supra* at 97, 672 NW2d 897.

(ECF No. 10-10 at PageID.861-862.)

The state court's decision did not unreasonably apply federal law.  The burden of demonstrating that a waiver of a jury trial was invalid lies with the defendant who waived it.  *See Sowell v. Bradshaw*, 372 F.3d 821, 832 (6th Cir. 2004).  "[A]lthough recommended, there is no federal constitutional requirement that a court conduct an on-the-record colloquy with the defendant prior to accepting the jury waiver."  *Spytma v. Howes*, 313 F.3d 363, 370 (6th Cir. 2002); *see also Fitzgerald v. Withrow*, 292 F.3d 500, 504 (6th Cir. 2002) (stating that neither an oral colloquy, nor any other particular form of waiver, is required for a valid waiver of jury trial as a matter of federal constitutional law).  Moreover, "[t]echnical knowledge of the jury trial right is not required for waiver to be effective."  *Spytma*, 313 F.3d at 370 (internal quotation omitted).  Most importantly, "there is a knowing and intelligent waiver where the defendant

15

'understood that the choice confronting him was, on the one hand, to be judged by a group of people from the community, and on the other hand, to have his guilt or innocence determined by a judge.'" *Sowell*, 372 F.3d at 836 (quoting *United States v. Sammons*, 918 F.2d 592, 597 (6th Cir. 1990)).

Although a criminal defendant may be deemed sufficiently informed to make an intelligent waiver of the right to jury trial if he or she is informed that a jury is composed of twelve (12) members of community; that the defendant participates in their selection; that a jury verdict must be unanimous; and that in a bench trial, the judge, alone, will decide guilt or innocence, such elements are not constitutionally required. *See id.* at 832.

In this case, Nichols concedes that he was provided with a waiver by trial of jury form. The waiver shows that Nichols and his attorney signed the form on December 10, 2012. (ECF No. 10-10 at PageID. 1055.) Courts must give "presumptive force" to written waivers of a jury trial. *Spytma*, 313 F.3d at 371. Although Nichols claims that he was not adequately informed of his right to a jury, he has not overcome the presumption that his waiver was valid.

Moreover, there is a pretrial transcript from the presently challenged state criminal case (No. 12-0008776-01-FC), during which Nichols waived his right to a

16

jury in open court.[3]  Although not part of the Rule 5 materials here, the Court may take judicial notice of this court record.  *See Lynch v. Leis*, 382 F.3d 642, 647 n.5 (6th Cir. 2004) (noting that judicial notice is properly taken of "court records [that] are available online to members of the public") (citation omitted); *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 468 (6th Cir. 2014) (indicating that a court may take judicial notice of entries from its docket or another court's, although it may not credit disputable facts therein as evidence); *see also United States v. Rigdon*, 459 F.2d 379, 380 (6th Cir. 1972) (per curiam) (indicating that a court may take judicial notice of companion criminal cases in a habeas petitioner's case).

In 2012, when Nichols was tried in the case at issue here, he was facing criminal prosecution in three separate cases in the Wayne County Circuit Court. *See* 12/10/12 Pretrial Conference Tr., *Nichols v. Davis*, Case No. 18-cv-10885 (E.D. Mich. filed Oct. 2, 2018), ECF No. 11-5 at PageID. 483.  Since the matters included the same prosecuting and defense attorneys and trial judge, they were called together during the pretrial stage.  *See id*.  The pretrial proceedings were subsequently docketed in only one of the cases, Case No. 12-007351-01-FH, as demonstrated by the transcript's case caption.  *See id.*  Nevertheless, the transcript

_____

[3] This Court discovered the transcript after learning about two separate criminal cases pending against Nichols in the Wayne County Circuit Court at the same time as the matter involved in the current habeas petition.  Those separate cases were referenced in the record before this Court.  (*See* ECF No. 10-4 at PageID. 371.)

17

reflects that all three cases were before the court. *See id.* at PageID. 483.

In Case No. 12-007351-01-FH, Nichols was convicted by jury of first-degree home invasion. He initiated a habeas action in this District challenging his conviction, in which the respondent filed the relevant Rule 5 materials. The transcript of the pretrial proceedings for that case, which included the proceedings for the case addressed here, were included in those materials. The Court, therefore, takes judicial notice of the December 10, 2012 pretrial conference transcript filed in that case.

The pretrial transcript shows that on December 10, 2012, the same day that Nichols signed his waiver of jury form, the trial court called three cases against Nichols, including Case Number 12-8776, for the purpose of placing a waiver of jury trial on the record. *See id.* at PageID. 483. At the onset, defense counsel informed the court that Nichols wanted to proceed by bench trial, and that this was "[t]he very first thing he indicated to [counsel] is that he wanted to do a bench trial and he trusts [the court] implicitly." *Id*. at PageID. 483-84; *see also id*. at PageID 485 ("this gentleman wants – wants a bench trial. Because he has asked me for a bench for quite some time. And up until this morning, the prosecution had been objecting to that bench"). Counsel further stated that after discussions with her client, "[h]e has indicated to me he wants to freely and voluntarily waive his right to a jury trial on both of these matters." *Id*. at PageID. 484.

When the court asked Nichols if it was true that he wanted to give up his right to a jury, he responded, "This Court alone." *Id*. at PageID. 487. The trial court explained to Nichols that he had a constitutional right to a jury trial and that if Nichols proceeded by jury "we'd select at least 12 individuals, and they'd hear all the evidence and the arguments of counsel and the charge by this court." *Id*. at PageID. 487-88. The court further explained that the people would have to prove the elements of the crime beyond a reasonable doubt; that the guilty verdict must be unanimous; and by giving up that right, the trial court would determine his guilt or innocence. *Id*. at PageID. 488-489. Nichols verbally acknowledged that he understood. *Id*. at PageID. 487-89.

The Court concludes that based on this record, Nichols was adequately advised of his right to a jury trial such that his waiver was done knowingly, voluntarily, and intelligently. Nichols was clearly informed of the rudimentary elements of a jury trial. *See Sammons*, 918 F.2d at 597 (citing *United States v. Martin*, 704 F.2d 267, 273 (6th Cir. 1983)) ("A defendant is sufficiently informed to make an intelligent waiver if he was aware that a jury is composed of 12 members of the community, he may participate in the selection of the jurors, the verdict of the jury must be unanimous, and that a judge alone will decide guilt or innocence should he waive his jury trial.") Accordingly, he is not entitled to habeas relief on this claim.

19

### D.    Denial of Request for DNA Testing

Nichols next asserts that the trial court erroneously denied his request for retesting of the DNA extracted from the water bottle found in the victims' home. The state trial court rejected the claim because Nichols failed to show that the refusal to order additional testing violated the Michigan Court Rules.  (ECF No. 10-10 at PageID. 865-866.)

Nichols relies on *Ake v. Oklahoma*, 470 U.S. 68, 83 (1985) to support his position.  In *Ake*, the Supreme Court held that the Due Process Clause requires a State to assure an indigent defendant has access to psychiatric experts when the defendant demonstrates that his sanity at the time of the offense presents a significant issue.  470 U.S. at 83.  However, as the Sixth Circuit has noted, *Ake* "emphasized that its ruling was limited to cases in which the defendant's mental condition was seriously in question upon the defendant's threshold showing."  *See Smith v. Mitchell*, 348 F.3d 177, 207 (6th Cir. 2003) (internal quotation marks omitted).  And, as the Sixth Circuit more recently held, a state court's denial of a defendant's request for state-funded non-psychiatric experts is not an "unreasonable application" of *Ake* because "[t]he Supreme Court has left open how *Ake* should extend to experts other than psychiatrists, and the Court's subsequent decisions have not created a 'clear or consistent path for courts to follow' when answering this due-process question[.]"  *Bergman v. Howard*, 54 F.4th 950, 958

20

(6th Cir. 2022) (internal citations omitted) (rejecting habeas petitioner's due process claim based on the state court's denial of her request for a state-funded toxicology expert to challenge the state's experts conclusions that the prescription drugs in her system impaired her driving).  Further, "circuit courts 'have not reached consensus' on whether 'the right recognized in *Ake*—to a psychiatrist's assistance in support of an insanity defense—extends to non-psychiatric experts as well.'"  *Id.* (quoting *Babick v. Berghuis*, 620 F.3d 571, 579 (6th Cir. 2010)).

Other courts also have held that a habeas petitioner cannot demonstrate entitlement to relief under AEDPA for the failure of the state court to appoint non-psychiatric expert witnesses for the defense because such a claim cannot be supported by clearly established Supreme Court law.  *See, e.g., Morva v. Zook*, 821 F.3d 517, 524-25 (4th Cir. 2016) (holding that the Virginia Supreme Court's decision that a capital murder defendant had no due-process right to appointment of a prison-risk assessment expert was not contrary to clearly established federal law; there was no clearly established federal law requiring the appointment of a state-funded non-psychiatric expert); *McKenzie v. Jones*, No. 00-cv-74577, 2003 WL 345835, *3 (E.D. Mich. Jan. 29, 2003) (holding that the Supreme Court had not yet extended *Ake* to require the appointment of non-psychiatric experts to indigent criminal defendants; therefore, the habeas petitioner was not entitled to a certificate of appealability); *Jackson v. Ylst*, 921 F.2d 882, 886 (9th Cir. 1990)

21

(finding that habeas relief was not supported by a habeas petitioner's claim that his due process rights were violated when he was denied the appointment of an expert on eyewitness identification).  Accordingly, Nichols' claim is not supported by clearly established Supreme Court law.[4]

### E.    Ineffective Assistance of Trial Counsel

Nichols argues that defense counsel was ineffective for (1) conceding his guilt and (2) failing to hire a DNA expert or call an expert to testify at trial. Although Nichols presents these claims as separate issues, the Court addresses them together.  Nichols raised these issues in his motion for relief from judgment. The state trial court rejected both claims, concluding:

> Defendant argues his trial counsel was deficient in her performance by failing to put the prosecution's case to the test through vigorous partisan advocacy.  Defendant, who was charged with home invasion, asked his counsel to request an independent test of the state's DNA evidence (a water bottle left in the complainant's home by the

---

[4] The record reflects that Nichols told the trial court on the first day of trial that he was willing to pay for the retesting himself. (*See* ECF No. 10-2 at PageID. 204.) Even in that scenario, however, the state court's refusal to delay the trial to allow for that testing was not unreasonable under clearly established federal law.  The Supreme Court has stated that broad discretion must be granted trial courts on matters of continuances.  *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964).  "The denial of a motion for a continuance amounts to a constitutional violation only if there is an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay."  *Franklin v. Bradshaw*, 695 F.3d 439, 452 (6th Cir. 2012).  The trial court had valid and non-arbitrary reasons for not delaying the trial to allow for the testing—for one thing, defense counsel indicated that she and Nichols agreed to pursue a defense not dependent on the results of the testing—and the trial court found the request to be for the purpose of delay and not a justifiable reason.

perpetrator).  Counsel stated on the record, her decision for not re-
testing the DNA evidence found on the water bottle was because she
did not want to provide the prosecution with additional evidence that
could be used to convict the defendant.  Defendant argues the results
of the DNA evidence was found in error, but he offers no explanation
as to how he came to this determination.  Trial Counsel's decision not
to retest DNA evidence in an attempt to not support incriminating
evidence against the defendant is textbook trial strategy.  *Mitchell, Id*.
DNA evidence is an objective tool used to identify the source of the
specimen.  In this scenario, it identified the defendant and the
defendant has not raised any meritorious issue suggesting the
evidence was tainted causing a misidentification.  Trial counsel
attempted to mitigate the impact of the positive identification of
defendant's DNA on the water bottle found in the complainant's home
by minimizing any attention to the evidence.  The defendant has not
met the requirements set forth in *Strickland*, with regard to his
counsel's performance, this Court has not found that counsel made
errors so serious that counsel was not functioning as the counsel
guaranteed the defendant by the Sixth Amendment and that the
deficient performance prejudiced the defendant.  Unless a defendant
makes both showings, it cannot be said that the conviction or sentence
resulted from a breakdown in the adversary process that renders the
result unreliable. *Pickens, supra*.

(ECF No. 10-10, PageID.863-864.)

The state court did not unreasonably apply federal law.  To prevail on his

ineffective assistance of counsel claim, Nichols must show that the state court's

conclusion was contrary to, or an unreasonable application of, *Strickland v.*

*Washington*, 466 U.S. 668 (1984).  *See Knowles v. Mirzayance*, 556 U.S. 111, 123

(2009).  *Strickland* established a two-prong test for claims of ineffective assistance

of counsel: the petitioner must show (1) that counsel's performance was deficient,

and (2) that the deficient performance prejudiced the defense.  *Strickland*, 466 U.S.

at 687.

First, Nichols fails to show that defense counsel rendered ineffective assistance by "conceding to his guilt."  Nichols takes issue with counsel's statement to the court that she would not agree to additional DNA testing because "it is not the Defense's position to provide the Prosecution with additional evidence against him."  (ECF No. 10-2 at PageID.204-205.)  Nichols claims this statement is "tantamount to acknowledgment[t] that Petitioner committed the offense."  (ECF No. 1 at PageID.22.)  The Court disagrees.  Defense counsel did not concede Nichols' guilt; instead, it appears that counsel was simply expressing her position on the retesting issue in the context of her defense strategy.  Nichols' interpretation of the statement is unreasonable given the context in which it was provided to the trial court.  He, therefore, fails to show that counsel acted deficiently.

Second, Nichols fails to show that defense counsel rendered ineffective assistance by refusing to obtain a DNA expert.  Nichols has not overcome the presumption that defense counsel's actions were sound trial strategy.  *Strickland*, 466 U.S. at 689.  As discussed, defense counsel explained to the trial court that the defense she and Nichols agreed to pursue did not require retesting of the DNA. (ECF No. 10-2 at PageID.203.)  Counsel further informed the court that she had previously requested an expert to determine whether or not the policies and

procedures of the Michigan State Police were followed.  (*Id*.)  Nichols fails to rebut the presumption that this was reasonable trial strategy.

Nor has Nichols established that he was prejudiced by counsel's actions. The prosecution's DNA expert, Brandon Good, testified that he obtained a full DNA profile from the swab on the water bottle and that the profile matched Nichols' DNA.  (ECF No. 10-3 at PageID. 343.)  Good further testified that "[t]he probability of selecting an unrelated individual at random from the population who would have the same DNA profile as the water bottle swabs, in a Caucasian population is one in 506.6 quadrillion; in an African American population, one in 123.1 quadrillion; and in a Hispanic population, one in 10.06 quintillion."  (*Id*. at PageID. 344.)  In other words, Good testified that he "would not expect to find this DNA profile again in the world's population."  (*Id*. at PageID. 348.)

Nichols has offered no evidence that an expert would have reached a different conclusion when analyzing the DNA evidence.  A habeas petitioner's claim that trial counsel was ineffective for failing to call an expert witness cannot be based on speculation.  *See, e.g., Gonzalez v. Knowles*, 515 F.3d 1006, 1015 (9th Cir. 2008) (finding no prejudice from counsel's alleged failure to investigate where petitioner "merely argues that if tests had been done, and if they had shown evidence of some brain damage or trauma, it might have resulted in a lower sentence"); *Racz v. Knipp*, No. CV 12-8270, 2014 WL 4449791, at *32 (C.D. Cal.

June 3, 2014) (finding that speculation about results of DNA testing is insufficient to satisfy the petitioner's burden to show prejudice). In the absence of such proof, Nichols is unable to establish that he was prejudiced by counsel's failure to obtain an expert witness to support the second prong of his ineffective assistance of counsel claim. *See Clark v. Waller*, 490 F. 3d 551, 557 (6th Cir. 2007). For these reasons, he is not entitled to habeas relief.

### F.   Ineffective Assistance of Appellate Counsel

Lastly, Nichols argues that appellate counsel was ineffective for failing to raise meritorious claims on direct appeal. The trial court rejected this claim when denying his motion for relief from judgment because the claims asserted in the motion lacked merit. (ECF No. 1 at PageID. 38-40.)

The Sixth Amendment guarantees a defendant the right to the effective assistance of appellate counsel. *Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985); *Halbert v. Michigan*, 545 U.S. 605, 609-10 (2005). The *Strickland* standard also applies to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005). Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). Court-appointed counsel does not have a constitutional duty to raise every non-frivolous issue requested by a defendant. *See Jones v. Barnes*, 463 U.S. 745, 751

(1983).  As discussed, Nichols' claims raised in this petition are meritless.

"[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue

that lacks merit.'"  *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010)

(quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).  Thus, Nichols is

not entitled to relief on this claim.

## IV.    Certificate of Appealability

For the reasons discussed, the Court is denying Nichols' request for habeas

relief.  Before he can appeal that decision, he must obtain a certificate of

appealability ("COA").  However, the Court is denying him a COA.

To obtain a certificate of appealability, a habeas petitioner must make a

substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).

To make this showing, the applicant is required to show that reasonable jurists

could debate whether, or agree that, the petition should have been resolved in a

different manner, or that the issues presented were adequate to deserve

encouragement to proceed further.  *Slack v. McDaniel*, 529 U.S. 473, 483-84

(2000).

For the reasons stated in this opinion, reasonable jurists would not find this

Court's assessment of Nichols' claims to be debatable or wrong.  The Court,

however, is granting Nichols leave to appeal in forma pauperis because such an

appeal could be taken in good faith.  28 U.S.C. § 1915(a)(3).

Accordingly,

**IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** but leave to proceed in forma pauperis is **GRANTED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: September 23, 2024

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, September 23, 2024, by electronic and/or U.S. First Class mail.

s/Aaron Flanigan
Case Manager
